## DECEMBER TERM, 1842.

### JAMES PICKENS *v.* LOGAN HARPER, *et al.*

The rule, that a party must recover upon the strength of his own title, and not upon the weakness of his adversary's, holds equally in equity as at law.

Under the 14th article of the Dancing Rabbit Creek treaty, granting reservations of land to the head of each Choctaw family, and to each of his children, the treaty intended to secure to the head of the family only one section, and to each of the children the amounts stipulated by the treaty ; *held,* therefore, that the bill of a Choctaw Indian, setting up title in himself, to the portion of land reserved for his children, must be dismissed.

THIS case was submitted upon bill and answers, for final decree.

CHANCELLOR. The complainant states, in substance, that at the time of the ratification of the Dancing Rabbit Creek treaty, made between the U. States and the Choctaw tribe of Indians, he was the head of a Choctaw family, having nine children, three over and six under the age of ten years ; and that he was, by the terms of the 14th article of said treaty, entitled to four contiguous sections of land, out of the territory which formed the subject of said treaty ; to wit, one section for himself, a half section for each child over ten years, and a quarter section for each one under that age ; that, at the time of the treaty, he was residing on section 6, town. 11, range 8, east, and that he applied to have that section, as also section 7 of the same township, and sections 1 and 12 of township 11, range 7, east, reserved from public sale ; that he fully complied with all the requirements of said 14th article of the treaty, necessary to perfect his title to said sections of land ; that the defendants have since acquired, from the government, the legal title to different portions of section 12, of which he prays they may be divested, and his title declared valid.

The answers admit the material allegations of the bill, and simply refer to the Court the general question, whether the complainant is entitled to recover, without presenting or urging any particular ground of defence. This devolves upon me the necessity of look-

ing, generally, into the nature of the complainant's claim ; for the rule, that a party must recover upon the strength of his own title, and not upon the weakness of his adversary's, holds equally in equity as at law.

It will be seen that the bill proceeds upon the assumption, that the complainant, as the head of a Choctaw family, is not only entitled, in his own right, to the section reserved expressly to him, but also to the reservations in favor of each of his children. This, I conceive, is a misapprehension of the spirit, meaning, and intention of the treaty. The treaty, after declaring that each Choctaw head of a family shall, upon certain conditions, be entitled to a section of land, proceeds thus : — "in like manner shall be entitled to half that quantity for each unmarried child, which is living with him, over ten years of age ; and a quarter section to such child as may be under ten years of age, to adjoin the location of the parent."

Although this language is somewhat obscure and inartificial, it is clear beyond doubt, that it was the purpose of the treaty to make substantive and distinct provisions for the children, independent of the father, although their title must be considered as following the conditions annexed to that of the father. The doubt with me is, whether the language referred to vests the technical, legal title in the father, to the portion reserved for the children, to be held for their use, or whether they take directly a clear, unincumbered fee to their portions, independent of the father. I am not advised what construction, in practice, the government of the United States has placed upon this article, in emanating titles under its provisions : — whether the grant is to the father, for the use of the children, or directly to the children themselves. It is true, that no practical exposition of that kind could change any rights which exist by virtue of the treaty ; it would, however, show the construction given by one of the parties to it, which I should be inclined to adopt. In the construction of a grant, it is the duty of the Court to give effect, if possible, to the intention of the parties. This intention is to be collected from the words and expressions of the grant itself; and where there is doubt or obscurity, the construction will be most strong against the grantor, and in favor of the grantee; and to that end, the Court will fill up an ellipsis, and transfer clauses and sen-

tences, so as to make it available. *Lloyd* v. *Say, et al.*, 1 Salk. 341; *Reesdale* v. *Halfpenny*, 2 P. Wms. 151 ; *Darrell* v. *Gunner*, Wm. Jones, 206 ; *Hammond* v. *Ridgley*, 5 Har. and Johns. Rep. 345; *Howard* v. *Rogers*, 4 id. 278.

I cannot conceive, that there is the slightest pretext for saying, that the father is exclusively entitled, as well to the reservation in his favor, as to that in favor of his children.   This would violate every known rule of construction, and thwart the plain intention of the treaty.   If it was intended, that the extent of the reservation, in favor of the father, should be measured by the number of his children, we should expect to find either a regular and proportional increase, or a gross number of acres reserved to him, according to the number of his children ; but we find a distinct reservation for the father, and then a separate but unequal provision for each child.   I think, by filling up an ellipsis, and making a slight transposition, the plain reading of the article is, that there shall be reserved to each head of a Choctaw family one section of land ; and, in like manner, there shall be reserved half that quantity for each child living with him, over the age of ten years ; and a quarter section to each child under that age.   In the case of *Newman* v. *Harris and Plummer* (5 How. Rep. 564), where this provision of the treaty was under discussion, the Court strongly intimate an opinion against the right of the father, beyond a single section. Referring to a charge given by the court below, Mr. Chief Justice Sharkey says :   " If by this charge the Court intended to convey the idea, that the title to the whole 1280 acres vested in Foster individually, and no portion of it to his children, or to him in trust for them, the propriety of the charge may be doubted."

If the construction which I place upon the language of the treaty be correct, it will follow, that the father is neither vested beneficially, nor in trust, to any portion of the land reserved on account of the children.   Although there is something, from the awkward structure of the sentence, which gives color to the idea, that the father is to take in trust for the children, yet the spirit and scope of the whole article on that subject is, I think, opposed to such construction.   I can see no solid reason in its favor.   The treaty itself indicates no special or general purpose in favor of separating

the legal from the equitable title, as to the reservation in favor of the children ; and as it expresses none, I feel bound to presume, that none such existed, and that it was not the intention to create such a distinction.

The complainant shows, that section six is the one to which he is individually entitled under the treaty, by reason of his residence thereon ; and as he shows no title to section twelve, which is here in controversy, his bill must, according to the view I have taken of it, be dismissed. But as the defendants have allowed him to progress to a hearing on the merits, without taking the objection upon which the case turns, each party will be directed to pay his own costs.

Let a decree be prepared accordingly.